IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------- x
PJM INTERCONNECTION, L.L.C., directly and  )
derivatively on behalf of Power Edge, LLC, )
                                            )
          Plaintiff,                        )    C. A. No. 08-216-JJF
    v.                                      )
                                            )
MARK GORTON, TOWER RESEARCH CAPITAL         )
LLC, TOWER RESEARCH CAPITAL                 )
INVESTMENTS LLC, ACCORD ENERGY LLC, BJ      )
ENERGY LLC, FRANKLIN POWER LLC, GLE         )
TRADING LLC, OCEAN POWER LLC, PILLAR        )
FUND LLC and POWER EDGE LLC,                )
                                            )
          Defendants.                       )
                                            )
--------------------------------------------------------------- x

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO
DISMISS UNDER FED. R. CIV. P. 9(b), 12(b)(1), 12(b)(5) AND 12(b)(6)**

OF COUNSEL:

David B. Tulchin
Richard J.L. Lomuscio
Brian L. Frye
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

Jesse A. Finkelstein (#1090)
Daniel A. Dreisbach (#2583)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
finkelstein@rlf.com
dreisbach@rlf.com
fineman@rlf.com

*Attorneys for Defendants*

June 17, 2008

-i-

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    PJM FAILS TO PLEAD A RICO CLAIM .........................................................3

          A.    PJM Fails to Allege a Fraudulent Scheme ..............................................4

          B.    The FERC Proceedings Undermine PJM's Complaint ...........................6

    II.    PJM LACKS STANDING .....................................................................................7

    III.    PJM FAILS TO PLEAD FRAUD WITH PARTICULARITY .............................9

    IV.    THIS COURT LACKS SUBJECT MATTER JURISDICTION
          OVER PJM'S STATE LAW CLAIMS ..............................................................10

    V.    PJM DID NOT PROPERLY SERVE TRC OR MR. GORTON .......................10

CONCLUSION .............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Annulli v. Panikkar*,
  200 F.3d 189 (3d Cir. 1999) .................................................................................5, 9

*Berardi v. Swanson Mem'l Lodge No. 48*,
  920 F.2d 198 (3d Cir. 1990) ........................................................................................9

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*,
  140 F.3d 494 (3d Cir. 1998) .................................................................................4, 5

*Danvers Motor Co. v. Ford Motor Co.*,
  432 F.3d 286 (3d Cir. 2005) ........................................................................................8

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
  232 F.3d 173 (3d Cir. 2000) ........................................................................................6

*Genty v. Resolution Trust Corp.*,
  937 F.2d 899 (3d Cir. 1991) ........................................................................................5

*Gould Elecs., Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) ........................................................................................8

*Hedges v. Musco*,
  204 F.3d 109 (3d Cir. 2000) ......................................................................................10

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
  926 F.2d 1406 (3d Cir. 1991) ..................................................................................4-5

*Mariana v. Fisher*,
  338 F.3d 189 (3d Cir. 2003) ........................................................................................8

*Midwest Grinding Co. v. Spitz*,
  976 F.2d 1016 (7th Cir. 1992) .................................................................................5-6

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
  549 F.2d 884 (3d Cir. 1977) ........................................................................................8

*Reynolds v. East Dyer Dev. Co.*,
  882 F.2d 1249 (7th Cir. 1989) ....................................................................................5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Storino v. Borough of Point Pleasant Beach,*
 322 F.3d 293 (3d Cir. 2003) ....................................................................................8

*Temple v. Haft,*
 73 F.R.D. 49 (D. Del. 1976) ....................................................................................9

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,*
 140 F.3d 478 (3d Cir. 1998) ................................................................................7-8

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.,*
 473 F.3d 506 (3d Cir. 2007) ....................................................................................8

## RULES AND STATUTES

Fed. R. Civ. P. 4 ...........................................................................................................10

Fed. R. Civ. P. 9 .........................................................................................................1, 9

Fed. R. Civ. P. 12 ........................................................................................................1, 8

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS UNDER FED. R. CIV. P. 9(b), 12(b)(1), 12(b)(5) AND 12(b)(6)

Defendants Mark Gorton, Tower Research Capital LLC ("TRC"), Tower Research Capital Investments LLC ("TRCI"), Accord Energy LLC ("Accord"), BJ Energy LLC ("BJ Energy"), Franklin Power LLC ("Franklin Power"), GLE Trading LLC ("GLE Trading"), Ocean Power LLC ("Ocean Power"), Pillar Fund LLC ("Pillar Fund") and Power Edge LLC ("Power Edge") respectfully submit this reply brief in support of their Motion to Dismiss the Complaint of PJM Interconnection L.L.C. ("PJM") pursuant to Rules 9(b), 12(b)(1), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

PJM's opposition brief ("PJM Br.") fails to rebut any of the multiple reasons for dismissal set out in defendants' opening brief ("Defs. Br.").

*First*, PJM remains unable to identify any "fraudulent scheme" to support its claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and continues to assert that forming legal entities, applying for PJM membership and trading in PJM's markets amount to "fraud." PJM merely repeats the complaint's bare assertion that the RICO "scheme" involved defendants deceiving PJM by using related "sham corporations" to make "extremely risky investments" in PJM's markets. (D.I. 1: Compl. ¶¶ 1, 112, 113.) But PJM ignores that the complaint itself establishes that PJM had full knowledge of the relationships among defendants, and that PJM nonetheless permitted -- with no limitation -- the very investments it now criticizes as "risky."

- PJM knew that defendants Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power, Pillar Fund and Power Edge were affiliated

> with each other and with Mr. Gorton, TRC and TRCI when they were accepted for membership by PJM. (Compl. Exs. A, C, E, G, J, L, N.)
>
> - PJM knew that the trades made by defendants Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power, Pillar Fund and Power Edge were "risky" when it permitted those trades. (Compl. ¶¶ 118, 125.)
>
> - PJM knew exactly how much collateral defendants Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power, Pillar Fund and Power Edge posted for each trade. (Compl. ¶ 115.)
>
> - PJM knew that defendants Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power, Pillar Fund and Power Edge were only responsible for their own trades. (Compl. ¶ 110.)

Not only is it incorrect as a matter of law for PJM to assert that the ordinary and lawful conduct of defendants constitutes a RICO violation, but it is also illogical for PJM to claim that defendants "deceived" PJM when PJM concedes that it knew from the outset of the very conduct it now labels fraudulent.

*Second*, PJM's own rules permitted the trading it now claims forms the basis of RICO violations, and the Federal Energy Regulatory Commission ("FERC") has firmly rejected PJM's attempt to change the rules. (D.I. 19: Defs. Br. at 8-9.) Unable to respond on the merits to this fact, PJM instead dismisses the FERC proceedings as having "nothing to do with" its allegations. (D.I. 28: PJM Br. at 11.) This is nonsense, for the FERC order of March 25, 2008 and the complaint address exactly the same question: whether PJM, which always permitted an affiliated company to trade separately and for its own account on PJM's markets, should be able to change the rules retroactively. (D.I. 20: Declaration of Richard J.L. Lomuscio, executed on May 7, 2008 ("Lomuscio Decl.") Ex. D (March 25, 2008 FERC

Order) at 14-19.) FERC decided that affiliates trading on PJM's market should be treated separately and the corporate form respected.

*Finally*, nothing in PJM's opposition refutes any of the other bases for dismissal identified by defendants in their opening brief. PJM's standing argument makes clear that a default by one PJM member only injures PJM's other members, not PJM itself, and the provision in the Amended and Restated Operating Agreement of PJM Interconnection, L.L.C. (the "Operating Agreement") upon which PJM relies -- as well as PJM's concession that it has not alleged any Default Allocation Assessment -- actually reinforce this point. (PJM Br. at 14-16.) PJM's particularity argument (PJM Br. at 25-27) is utterly deficient because PJM still fails to identify adequately any fraud.

This Court should dismiss the complaint with prejudice.

## ARGUMENT

### I.  PJM FAILS TO PLEAD A RICO CLAIM.

As explained in defendants' opening brief, PJM fails to plead a RICO claim because its own rules permitted the conduct of which it complains and PJM does not allege any fraudulent scheme. (Defs. Br. at 22.) In its response, PJM ignores those rules and the highly relevant FERC proceedings which are so devastating to its argument. (PJM Br. at 11, 16-23.) PJM's brief also makes clear that the "scheme" it identifies involves only lawful, routine business conduct. Of course, while lawful, ordinary conduct can under some circumstances be part of a fraudulent scheme, the converse -- that no fraudulent scheme is necessarily set forth by allegations of ordinary conduct alone -- is equally true. In this action, no fraud is alleged.

### A.     PJM Fails to Allege a Fraudulent Scheme.

PJM alleges that defendants engaged in a "fraudulent scheme" by forming legal entities under Delaware law, applying for PJM membership and trading in PJM's markets. (Compl. ¶¶ 1, 54, 110-15.) PJM's purported summary of this alleged "fraudulent scheme" actually identifies no fraud of any kind. (PJM Br. at 17-19.) Although the complaint refers to defendants as "sham corporations" participating in a "fraudulent scheme," these are conclusions without any particularized allegations to show that trading on PJM's markets by normal state-law entities (and in accordance with PJM's rules) constitutes some "fraud." (Compl. ¶¶ 1, 54, 110-15.) In fact, the documents attached to the complaint show that PJM knew that defendants were and are separate but affiliated entities, and that they fully and truthfully disclosed to PJM their relationships to Mr. Gorton and each other. (Compl. Exs. A, C, E, G, J, L, N.) Conspicuously absent from PJM's allegations is any explanation of how defendants misrepresented anything to anyone. "'A [RICO] scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1415 (3d Cir. 1991)). Nothing of the sort is set out in the complaint.

PJM's only counter is the unremarkable proposition that a lawful mailing or wire transmission that furthers a fraudulent scheme may under some circumstances constitute mail or wire fraud. (PJM Br. at 19-20.) Where PJM falls short, however, is in failing to identify any underlying fraudulent scheme. *See Kehr Packages*, 926 F.2d at 1417, where the

Third Circuit affirmed dismissal of a RICO claim because the allegations "simply contain no indication of the deception or overreaching which the mail fraud statute requires." *See also Brokerage Concepts*, 140 F.3d at 528, 529 (holding that a failure to disclose true motivation of business tactics "does not create a cognizable 'scheme to defraud' in the absence of any evidence that this omission was 'reasonably calculated to deceive'").

PJM distinguishes *Annulli v. Panikkar*, 200 F.3d 189, 199 (3d Cir. 1999) and *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 915 (3d Cir. 1991) on the ground that they did not involve motions to dismiss. (PJM Br. at 20-21.) Their procedural posture is of no importance; the Third Circuit held in both cases that, as a matter of law, non-fraudulent acts cannot support a RICO claim. *Annulli*, 200 F.3d at 199 ("a simple breach of contract . . . is not a predicate act of racketeering activity"); *Genty*, 937 F.2d at 915 (no RICO claim exists if "the predicate criminal offenses under the statute's definition of 'racketeering' are wholly absent").

PJM's attempts to distinguish *Kehr Packages*, *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249 (7th Cir. 1989) and *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992), are similarly unavailing. (PJM Br. at 21-23.) All three cases stand for the logical proposition that a plaintiff alleging mail or wire fraud must set out some cognizable fraud. In *Kehr Packages*, 926 F.2d at 1417, the Third Circuit held that, as a matter of law, the mail fraud statute requires "deception or overreaching." Similarly, the Seventh Circuit in *Reynolds*, 882 F.2d at 1251, affirmed dismissal of a RICO claim based on fraud because plaintiffs "have not alleged or shown that the defendants lied to them -- or anybody else." And in *Midwest Grinding*, 976 F.2d at 1025, the Seventh Circuit concluded

that "civil RICO plaintiffs persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions."

### B. The FERC Proceedings Undermine PJM's Complaint.

PJM's refusal even to address the FERC proceedings is itself highly revealing. On March 25, 2008, FERC rejected PJM's proposed rule change, which would have required these defendants to cover each others' losses. (Lomuscio Decl. Ex. D at 14-19.) The FERC order states that "it is not just and reasonable to adopt a provision that will address only a subset of the entities likely to face the credit risks presented, and that discriminates against certain companies based on their corporate form." (Lomuscio Decl. Ex. D at 19.) FERC also indicated that if PJM wished to it should "make appropriate additional filings" if it "believes that the collateral requirements it has already filed are inadequate to the risks it faces." (Lomuscio Decl. Ex. D at 19.)

FERC thus declined to approve a rule intended to alter what PJM had always permitted -- allowing Power Edge to trade for itself, without holding Power Edge's affiliates (Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power and Pillar Fund) responsible for Power Edge's trading. (Lomuscio Decl. Ex. D at 19.) The conduct expressly permitted by PJM's regulator cannot possibly form the basis of a RICO claim. *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 185 (3d Cir. 2000) (holding defendant "does not commit a predicate RICO act when it engages in conduct [a regulatory agency] expressly permits").

## II. PJM LACKS STANDING.

PJM also fails to plead an injury in fact caused by defendants' alleged conduct. PJM argues that it "has not been reimbursed for all of the damages caused by defendants" (PJM Br. at 14), but misses the point that, under PJM's own Operating Agreement, any payment defaults may be billed and collected from PJM's other member companies and are not borne by PJM itself. (Lomuscio Decl. Ex. A (Operating Agreement) § 15.2.)

PJM's additional contention that it has been authorized to bring this lawsuit misreads the very Operating Agreement provision it purports to rely on. (PJM Br. at 15-16.) That provision expressly states that PJM can only be authorized to bring a lawsuit by "a majority of the Members that *have paid* a Default Allocation Assessment" when those members "request and appoint [PJM] to act as agent." (Lomuscio Decl. Ex. A § 15.2.1 (emphasis added).) The plain language of the Operating Agreement, which only allows members who "*have paid* a Default Allocation Assessment" to authorize PJM to bring suit, makes clear that a Default Allocation Assessment must occur before PJM can be authorized to proceed. (Lomuscio Decl. Ex. A § 15.2.1 (emphasis added).) PJM repeatedly concedes that it has never alleged that it has made any such Default Allocation Assessment,[1] and it thus acknowledges that any recovery from this lawsuit must be returned "to the members that paid the Default Allocation Assessment." (PJM Br. at 14, 16.) Given that no Default Allocation Assessment has ever been made, PJM lacks standing because it has not suffered

---

[1] On the eighth line of p. 14 of its brief, PJM concedes that it has not alleged that it has ever made a Default Allocation Assessment. It does the same at the top of p. 16 of its brief.

"an injury in fact – an invasion of a legally protected interest." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484-85 (3d Cir. 1998).

PJM's assertion (PJM Br. at 12-13) that defendants urge an incorrect standard of review under Rule 12(b)(1) is also wrong. *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977), cited by defendants in their opening brief (at p. 12), sets out the well-established proposition that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." This is a correct characterization of *Mortensen*, and continues to be Third Circuit law. *See United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (holding that "the District Court was entitled to consider and weigh evidence outside the pleadings and properly placed the burden of establishing jurisdiction" on plaintiff on a motion to dismiss pursuant to Rule 12(b)(1)).

The cases on which PJM relies stand for the proposition that the Court must read the allegations in the light most favorable to plaintiff, not that the allegations regarding jurisdiction must be accepted as true by the Court. *See, e.g., Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 288 (3d Cir. 2005); *Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). This Court is free to consider evidence outside the pleadings in assessing jurisdiction on a 12(b)(1) motion to dismiss. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (holding "a court may determine subject matter jurisdiction without reaching the merits") (citing *Mortensen*, 549 F.2d at 891).

-8-

Contrary to PJM's contention (PJM Br. at 12-13), there is also no need to wait for an Answer before dismissing a case for lack of jurisdiction. *See Berardi v. Swanson Mem'l Lodge No 48*, 920 F.2d 198, 200 (3d Cir. 1990) (holding "a facially sufficient complaint may be dismissed before an answer is served if it can be shown by affidavits that subject matter jurisdiction is lacking"). In any event, PJM's point is academic because defendants rely on the Operating Agreement, which is repeatedly referenced in the complaint. (Compl. ¶¶ 44, 45, 52, 53.)

### III. PJM FAILS TO PLEAD FRAUD WITH PARTICULARITY.

As defendants have once shown (Defs. Br. at 21-22), PJM failed, as required by Rule 9(b), Fed. R. Civ. P., to set forth fraud with particularity. PJM argues that its complaint provides "detail" about innocuous matters, including that defendants formed legal entities, applied for PJM membership and traded in PJM's markets (PJM Br. at 25-27), but ignores that the rule requires that the <u>fraud</u> be set forth with particularity. It is black letter law that allegations that make "[n]o connection . . . between a particular document or even category of documents and a particular false representation or material omission . . . do not satisfy the particularity requirement of Rule 9(b)." *Temple v. Haft*, 73 F.R.D. 49, 54 (D. Del. 1976). Indeed, "when alleging mail and wire fraud as predicate acts in a RICO claim, plaintiff's pleadings must identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentations." *Annulli*, 200 F.3d at 201 n.10. PJM has failed entirely to do so.

## IV.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PJM'S STATE LAW CLAIMS.

Dismissal of PJM's RICO claims will strip this Court of any independent basis for jurisdiction over PJM's state law claims. This is undisputed. PJM does not and cannot establish that, at this early stage of the litigation, the interests of efficiency, fairness and comity require this Court to adjudicate the pendent state claims. *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). The contrary is so.

## V.  PJM DID NOT PROPERLY SERVE TRC OR MR. GORTON.

PJM concedes that service on TRC and Mr. Gorton was improper. (PJM Br. at 28.) Its failure to serve TRC or Mr. Gorton properly in no way required the other defendants to accept service on their behalf. If PJM truly wished the case to "proceed with all defendants at once" (PJM Br. at 28), it could have requested a waiver of service pursuant to Federal Rule of Civil Procedure 4(d). Defendants bear no responsibility for PJM's failure even to effect proper service.

## CONCLUSION

Defendants' motion to dismiss the complaint with prejudice should be granted.

Dated: June 17, 2008

OF COUNSEL:

David B. Tulchin
Richard J.L. Lomuscio
Brian L. Frye
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000

/s/ 

Jesse A. Finkelstein (#1090)
Daniel A. Dreisbach (#2583)
Steven J. Fineman (#4025)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700
finkelstein@rlf.com
dreisbach@rlf.com
fineman@rlf.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing(s) and Hand Delivered to the following:

**BY HAND DELIVERY**
Collins J. Seitz, Jr., Esquire
Max B. Walton, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
8th Floor
P.O. Box 2207
Wilmington, DE 19899

I hereby certify that on June 17, 2008, I have sent by Federal Express, the foregoing document to the following non-registered participant:

**BY FEDERAL EXPRESS**
Eric N. Macey, Esquire
Novack & Macey LLP
100 North Riverside Plaza
Chicago, IL 60606-1501

Steven J. Fineman (#4025)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
fineman@rlf.com