IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PJM INTERCONNECTION LLC,              :
                                      :
        Plaintiff,                    :
                                      :
    v.                                :   Civil Action No. 08-216-JJF
                                      :
MARK GORTON, et al.,                  :
                                      :
        Defendants.                   :

Eric N. Macey, Esquire; Molly S. DiRago, Esquire; and Richard G. Douglass, Esquire of NOVACK AND MACEY LLP of Chicago, Illinois. Collins J. Seitz, Jr., Esquire and Max Brian Walton, Esquire of CONNOLLY, BOVE, LODGE & HUTZ LLP of Wilmington, Delaware.

Counsel for Plaintiff.

Steven J. Fineman, Esquire of RICHARDS, LAYTON & FINGER, PA of Wilmington, Delaware.

Counsel for Defendants.

**MEMORANDUM OPINION**

March 30, 2009

**Farnan, District Judge**

Pending for the Court is Defendants' Motion to Dismiss (D.I. 18). For the reasons discussed below, the Court will deny Defendants' motion.

## BACKGROUND

Plaintiff PJM is a regional transmission organization ("RTO") operating a bulk energy transmission system for the mid-western and north-eastern United States. Plaintiff also operates several related markets: a day-ahead energy market, a real-time energy market, markets for ancillary services, and markets for the sale and purchase of financial rights and obligations, including markets for what are known as financial transmission rights or "FTRs". (D.I. 28 at 2-3.)

Defendant Mark Gorton owns the Lime Group, a conglomerate of high-tech business entities. Among other things, Gorton and the Lime Group own defendants TRC and TRCI (collectively, the "Tower Companies"). The Tower Companies are hedge funds that engage in technically sophisticated trading and investing on the basis of quantitative, statistical, and mathematical modeling. Gorton is also the founder of all the other corporate defendants: Accord, BJ Energy, Franklin Power, GLE Trading, Ocean Power, Pillar Fund, and Power Edge (collectively, the "Trading Companies"). (Id. at 3.)

The Trading Companies participate in the markets operated by Plaintiff. Plaintiff contends that Gorton and the Tower Companies formed the Trading Companies to house various investment strategies, and each Trading Company corresponds to a different strategy. Specifically, Plaintiff contends that one of the Trading Companies, Power Edge, followed an unusual quantitative trading scheme of acquiring primarily "short counterflow FTR positions," whereas other Trading Companies acquired the opposite "prevailing flow FTRs." (Id. at 6-7.)

Plaintiff further contends that Power Edge's counterflow FTR positions were a "colossal bust," suffering a cumulative loss of $18.3 million since May, 2007, and that Power Edge defaulted on this debt. (Id. at 7-8.) After Power Edge defaulted, Plaintiff contends that Defendants deliberately manipulated Plaintiff's energy markets to benefit the other Trading Companies at the expense of increasing the defaults of Power Edge. Thus, by the time Plaintiff filed suit to collect the debt, Power Edge had defaulted on approximately $47.6 million in FTR obligations. (Id. at 8-9.)

Members of Plaintiff's energy market agree to an Amended and Restated Operating Agreement of PJM Interconnection, LLC (the "Agreement"). Under Section 15.2 of the Agreement, when a member defaults on any obligation to PJM, "the PJM Board shall initiate such action against such Member to enforce such obligations as

3

the PJM Board shall deem appropriate." (D.I. 20, Ex. A.) The Agreement also provides that, upon such a default, PJM may issue a "Default Allocation Assessment" to the non-defaulting members, to require them to pay to PJM their aliquot share of the default. (Id.) However, such an allocation "shall in no way relieve the defaulting Member of its obligations," nor does it "limit any rights the LLC may have against the defaulting Member." (Id.) In the event of a Default Allocation Assessment, the Agreement further authorizes PJM to sue on behalf of the non-defaulting, paying members. (Id.)

After Power Edge's default, Plaintiff chose not to issue a Default Allocation Assessment against the other members of the market. Instead, Plaintiff filed the instant action against Defendants, alleging a fraudulent scheme to manipulate the market, to the benefit of certain Trading Companies and to the detriment of Power Edge's positions, with intent to default on Power Edge's obligations and pass the burden of that default on to the other members of the market through a Default Allocation Assessment.

Defendants contend that Plaintiff's Complaint should be dismissed because: 1) Plaintiff lacks standing to bring suit because a Default Allocation Assessment would pass any alleged injury to the members of the market, relieving Plaintiff of any injury-in-fact; 2) Plaintiff fails to state its fraud claims with

sufficient particularity; 3) the Court lacks jurisdiction over Plaintiff's state law claims; and 4) service of process as to certain Defendants was improper and ineffective.

Plaintiff contends that: 1) Defendants' scheme and Power Edge's default has caused an injury-in-fact to PJM and its members, regardless of the possibility of recovery through a Default Allocation Assessment; 2) its fraud claims are stated with ample particularity; 3) the Court has supplemental jurisdiction over Plaintiff's state law claims, under 28 U.S.C. § 1367(a); and 4) any service defects have been cured.

## DISCUSSION

### A.  Injury-in-fact

"For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003). "To state an injury-in-fact sufficient to survive a motion to dismiss, [Plaintiff] must simply plead that they suffered some concrete form of harm" because of Defendants. Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 292 (3d Cir. 2005).

In this case, Plaintiff has alleged monetary harm of over $47 million as a direct result of Defendants' trading scheme and Power Edge's continuing default. "Monetary harm is a classic

form of injury-in-fact." Id. at 293. Although the contract between Plaintiff and the members of Plaintiff's market provides for a potential remedy through a Default Allocation Assessment, Plaintiff is not obligated to pursue this remedy and may instead choose to pursue a remedy directly from the defaulting party himself. (D.I. 20, Ex. A.) Moreover, the Court finds that Plaintiff's Complaint sets forth more than simply a claim for recovery against Power Edge for default. Rather, the Complaint describes a deliberate pattern of conduct intended to fraudulently enrich Defendants' Trading Companies, at the expense of Plaintiff and the other members of Plaintiff's market. Taking these allegations as true in the context of the present Motion to Dismiss, this pattern of conduct injures Plaintiff by undermining Plaintiff's market, in addition to the harm caused by Power Edge's default. The extent to which Plaintiff may be able to mitigate that damage is a factual question inappropriate for disposition in a Motion to Dismiss.

Therefore, the Court finds that Plaintiff's Complaint alleges a legally sufficient injury-in-fact.

**B.  Plaintiff's Fraud Claims**

Defendants contend that Plaintiff's Complaint fails to allege any unlawful conduct and therefore fails to state a claim of fraud under 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud). Plaintiff alleges these fraud claims as predicate crimes

to Plaintiff's RICO claim under 18 U.S.C. § 1962.  See 18 U.S.C. § 1961(1) (listing predicate crimes, including mail fraud and wire fraud).  The Complaint alleges that Defendants used mail and electronic systems to, inter alia, send Certificates of Incorporation for Defendants' various companies to the Secretary of State of Delaware, send membership applications to PJM, and to place bids on Plaintiff's energy market. (D.I. 1 at ¶¶ 55, 58, 59, 61, 63, 66, 67, 70, 73, 74, 78, 81, 83, 87, 90, 92, 95, 98, 100, 103, 106, 108, 150, 164.) Defendants characterize this alleged activity as "routine business activities," not prohibited by law and therefore not fraudulent. (D.I. 19 at 10.)

As noted above, however, the Court reads Plaintiff's Complaint as alleging a fraudulent pattern of conduct intended to exploit and manipulate Plaintiff's energy market.  Specifically, Plaintiff alleges that Defendants deliberately entered into transactions that would enrich certain Trading Companies while increasing the size of Power Edge's default, with no intent to repay Power Edge's debt.  The Complaint also alleges that Defendants Mark Gorton and the Tower Companies actively participated in this scheme through their close management of the Trading Companies and Power Edge.  Therefore, the Court finds that Plaintiff's Complaint alleges sufficiently specific fraudulent conduct to state a RICO claim under 18 U.S.C. § 1962.

C. **Supplemental Jurisdiction**

Defendants' jurisdictional challenge to Plaintiff's state law claims is premised on Defendants' argument that Plaintiff fails to state a claim under the Federal RICO statute. (D.I. 19 at 23.) Having found that the Complaint sufficiently alleges a RICO claim under 18 U.S.C. § 1962, the Court further finds that Plaintiff's state law claims arise from the same "common nucleus of operative fact" that "would ordinarily be expected to [be tried] all in one judicial proceeding." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). Therefore, the Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

D. **Service**

Although Plaintiff agrees that service as to certain Defendants was not proper, Plaintiff has properly re-served those Defendants. (D.I. 28, Ex. A.) Defendants do not contend that this re-service was ineffective. (D.I. 29 at 10.) Therefore, Defendants objection to service is now moot.

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendants Motion to Dismiss. An appropriate order will be entered.